Bernice BROWN, Plaintiff in Error,

v.

The STATE of Oklahoma, Defend-
ant in Error.

No. A–13568.

Court of Criminal Appeals of Oklahoma.

June 30, 1965.

Rehearing Denied Aug. 2, 1965.

William P. Huckin, Jr., Tulsa, for plaintiff in error.

Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge.

Bernice Brown hereinafter referred to as defendant was convicted in the District Court of Tulsa County for the crime of Shooting With Intent to Injure, and appeals.

On appeal the assignments of error are argued under three propositions. (a) That the evidence was wholly insufficient to support the verdict of the jury. (b) That the trial court misinstructed the jury, and (c) that the assistant county attorney committed reversible error when on voir dire he commented that the defendant might not take the witness stand in her behalf.

Since the first proposition relates to the sufficiency of the evidence, it will here be necessary to set forth briefly the pertinent facts upon which the State relies for a conviction.

On the evening of October 19, 1963, the defendant and her husband, one Wallace Brown, went to the Eureka Club, a private drinking and gambling club, located at 614 East Archer Street in the city of Tulsa. After being checked for firearms and knives, they passed into the bar, and later into the gambling room adjacent to said bar, where at approximately 6:00 o'clock A.M. the next morning an altercation between the defendant's husband, Wallace Brown and one Jesse Virgil Johnson occurred. The State's testimony substantially was that this "tussle" occurred when a dispute arose at the dice table over an exchange of money. No blows were struck, but the testimony of witnesses was that Wallace Brown seized Jesse Virgil Johnson around the waist and Johnson seized Brown around the neck. The defendant hurriedly left the room, crossed the bar room and secured a .22 caliber revolver from the weapons checker, one Willa Mae Mannier, asserting that her first cousin, Stanford "Hustler" Johnson had instructed the defendant to take the weapon home for him. Instead of leaving the premises, the defendant returned quickly to the gambling room where the two men were still "tussling." She took two steps inside the door with the revolver in one hand and a handbag in the other.

At this point State's testimony is conflicting as to whether she implored the some twenty five occupants of the room to separate the two men or whether she implored them after firing the revolver, but in any event she fired the revolver and a bullet struck and lodged in the body of Johnson. After the revolver was fired and the bullet struck Johnson the room emptied in a matter of seconds, and whether defendant was knocked to the floor or fell is not clear, but the evidence was that she did fall to the floor.

In the confusion that followed the shooting, the revolver disappeared as did most of the witnesses, the victim, the assailant and her husband.

The testimony of the defendant was substantially in accord with the facts as related by the witnesses who testified on behalf of the State, but differ in that she denied seeking the particular weapon belonging to her cousin, "Hustler" Johnson, and stated that the weapons checker Willa Mae Mannier had taken a firearm from her purse and given it to the defendant and instructed her not to tell anyone where she got it. Defendant further testified that when the altercation started, she implored the men in the gambling room to stop it but they declined to do so. She gave as her reason for securing the pistol that "Well, I knew that Wallace had had this bad neck injury and was under a doctor's care, and at times he would black out. And he gets nervous a lot, and I knew if—knowing him as being a husband for twelve years, I knew him, if somebody drew a chair on him he would be trying to defend himself."

She specifically denied intentionally firing the weapon and claimed that it accidentally discharged.

Under the statement of facts as above outlined the trial court gave the jury standard instructions relating to the offense charged with the additional instruction relating to the right of the defendant to defend a member of her family. No exception was taken to the instructions given, nor was one offered by the defendant on any theory of defense than those contained in the court's instructions.

■■ The defendant's first assignment of error, that the evidence was wholly insufficient to support the verdict of the jury, is predicated upon the assumption that the evidence as outlined above is wholly insufficient to establish that the defendant intentionally fired the revolver with the intent to injure Jesse Virgil Johnson. With this contention we cannot agree. The subjective intent with which an act is done is seldom established by direct evidence, but must of necessity be determined by all of the attending facts and circumstances surrounding such act.

In the instant case the defendant feared injury to her husband. She intentionally secured the weapon from its custodian and brought it into the room pointing it in Johnson's direction, and while she asserted that she did not intentionally fire it to injure the said Jesse Virgil Johnson, the jury was not bound to believe her testimony, as indeed, they were not bound to believe her act in firing the revolver was in the necessary defense of·her husband.

We are of the opinion that the facts and circumstances were sufficient to establish that the defendant intentionally fired the revolver with the intent of injuring Jesse Virgil Johnson.

■ Were we to assume that the firing of the weapon was accidental as is contended, this assumption would not justify vacating the verdict of the jury for as was said in Lane v. State, Okl.Cr., 84 P.2d 807, Syllabus #2:

"2. Even though the firing of the gun, resulting in injury is unintentional, it is not excusable where it is the result or incident of an unlawful act, such as pointing or presenting a gun, pistol or other firearm at another person in such a manner as to constitute an offense under the laws of the state."

■ In considering defendant's second contention that the trial court erred in misdirecting the jury we again observe that no exceptions were taken to the instructions of the court nor were any requested on any other theory of defense, and we will here follow the rule enunciated in the body of the opinion of Hopkins v. State, Okl.Cr., 231 P. 97, appearing at page 98:

"No objections were made or exceptions taken to the instructions given by the court to the jury, and no other or different instructions were requested by

the defendants. It is the duty of the trial judge, without a request, to instruct the jury on the salient features of law raised by the evidence, but, where no omission is pointed out, the trial judge need not submit an instruction on every possible question of law that might be involved, particularly where the defendants are represented by able counsel, as in this case. Under circumstances like these defendants will not be permitted to speculate on a favorable verdict from the jury, and then, when disappointed, apply for relief in this court."

 Under proposition number three of her brief defendant argues that one of the prosecuting attorneys was guilty of misconduct which prejudiced her rights. The alleged misconduct consisted in commenting on voir dire that "we don't know at this time, the defendant may or may not take the witness stand."

It appears from the record that after the jury was empaneled and sworn defense counsel objected to the prosecutor's remark on voir dire and moved for a mistrial. The trial judge overruled for the reason that the objection was not timely made. It does not appear that the defense counsel objected or took exception to this ruling by the trial judge.

We are inclined to think that the trial judge was correct in his ruling on this matter, that is, that defendant had waived her right to object by waiting until after the jury was empaneled and sworn. However, it clearly appears that he then did not take an exception to the court's ruling, and this Court has held many times that errors to which no exceptions were taken will not be considered on appeal unless they are jurisdictional or fundamental in character. Romjue v. State, Okl.Cr., 375 P.2d 351.

It is also well established law that errors of law occurring in the trial of a criminal case, unless fundamental or jurisdictional, must be presented in the Motion for New Trial in order to be considered on appeal. Fryar v. State, Okl.Cr., 385 P.2d 818.

Even assuming that the record in the instant case had been properly preserved and exceptions taken to remarks of counsel and ruling of the court thereon, it does not appear that the defendant was injured by such remarks since she did testify as a witness in the trial in her own behalf.

We are of the opinion and therefore hold that the judgment and sentence appealed from should be, and the same is hereby

Affirmed.

NIX and BRETT, JJ., concur.