Joe Rena STRONG, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-75-518.

Court of Criminal Appeals of Oklahoma.

March 4, 1976.

Rehearing Denied March 30, 1976.

James D. Jordan, Okmulgee, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Kenneth Lisle, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Joe Rena Strong, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Okmulgee County, Case No. CRF–75–13, for the offense of Second Degree Murder, in violation of 21 O.S.Supp.1974, § 701.2, ¶ 1. The jury found the defendant guilty as charged, and in accordance with 21 O.S.Supp.1974, § 701.4, the trial court fixed defendant's punishment at imprisonment for an indeterminate term of ten (10) years to life. From said judgment and sentence a timely appeal has been perfected to this Court.

Briefly stated, the evidence adduced at trial on behalf of the State was clearly sufficient to support the verdict of the jury that defendant unlawfully shot and killed Katherine Thomas with premeditation on January 26, 1975, in Okmulgee County. At approximately 7:30 p. m., the defendant shot the victim in the back with a pistol, as she emerged from the home of a friend. She then fled to the street where defendant fired a final shot into the right side of her head, at close range, and then ran away. Autopsy established that death was attributable to either the wound to the head or one of the two bullet wounds in the back. Witnesses present testified that the deceased was not armed but a plastic tear gas pistol was found in the street about twelve to fifteen feet from the body. Although the extent of their relationship was not established, the victim and defendant were previously acquainted and defendant had visited in the home in which the victim lived with her common-law husband. Shortly prior to her death the victim had stated that she feared the defendant and did not want to see him anymore.

In testifying in his own behalf, the defendant admited shooting the victim three times but contended that he acted in self-defense. He testified that he and the victim had an intimate affair for several years, and she suffered a miscarriage as a result of becoming pregnant by him in 1974. However, the victim had threatened defendant's life on numerous occasions due to rumors that he was having a relationship with another woman, and in such an argument the victim had shot at defendant two weeks prior to her death. He asserted that on the evening of her death the victim was angered with jealousy and telephoned him to meet with her. When defendant arrived at the residence where the incident occurred, the victim was already there. The victim had told him not to come into the house but to wait in a car in which the victim and her common-law husband had ridden to that residence. However, the car doors were locked, and defendant sat in a chair to the side of the front porch of the residence. Defendant expected the victim to be alone but observed her common-law husband exit the residence first. As the

victim was then leaving the house, defendant called to her and she fell down and pulled a pistol. Defendant then reached for his pistol and ran over to her. They then proceeded to the street where the victim threw her pistol down behind her and immediately grabbed defendant's pistol which accidently discharged without striking the victim. As the victim then ran toward her pistol, the defendant shot her. He then fled and disposed of the gun but surrendered himself to authorities later that night. Defendant explained that he knew the victim could be dangerous and had a .32 caliber revolver, and thought this was the gun the victim was carrying. He explained his possession of a gun in testifying that he always carried a pistol despite knowledge that this constituted a felony for him to do so since he was previously convicted of a felony. Defendant admitted a prior felony conviction for Shooting with Intent to Kill and received a suspended sentence which was subsequently revoked as a result of an assault upon the deceased, and further admitted a prior conviction for breaking and entering into the victim's house. Other evidence introduced in defendant's behalf established that the victim had assaulted another individual about twelve years prior thereto, and that the victim was convicted of Assault with Intent to Kill in 1960 and received a five year suspended sentence which was revoked in 1963.

In rebuttal the State introduced evidence that the victim had previously had a hystrectomy and could not have become pregnant or suffered a miscarriage in 1974. In surrebuttal the defendant explained that his prior testimony in this regard was based upon information that the victim had related to him.

■■■ In his brief defendant raises several assignments of error relating to proceedings before the trial court, which in substance are as follows: Error of the trial court in overruling defendant's motion to quash and motion to dismiss; improper introduction of hearsay testimony upon the victim's state of mind and laboratory tests for the presence of alcohol in the deceased's blood; failure of the trial court to rule upon objection to examination by the State; error of the trial court in restricting the scope of defendant's cross-examination; improper leading questions in direct examination by the State; error in the introduction of testimony upon the cause of death and prejudicial pictures of the body over defendant's proffered stipulation as to the cause of death; error of the trial court in overruling defendant's demurrer to the evidence; error of the trial court in instructing upon first degree manslaughter as a lesser included offense and refusing defendant's tendered instructions upon self-defense; error of the trial court in permitting one attorney for the State to give initial closing argument and another to make final closing argument; error of the trial court in directing the removal of the defendant from the courtroom for misconduct following the commencement of closing arguments; improper and prejudicial closing argument by the State. However, many of these assignments of error were not properly preserved for review when they arose before the trial court, and others are clearly without merit and patently frivolous. Further, no assignment of error was properly preserved for review and presented in defendant's Motion for New Trial, the body of which simply reads: "Comes now the Defendant and requests a new trial." [O.R. 67] As set forth in the fourth paragraph of the Syllabus in *Brown v. State,* Okl.Cr., 404 P.2d 78 (1965), this Court has repeatedly held:

> "Errors of law occurring in the trial of a criminal case, unless fundamental or jurisdictional, must be presented in the Motion for new trial in order to be considered on appeal."

Also see, *Washington v. State,* Okl.Cr., 426 P.2d 372 (1967) and *Hathcock v. State,* Okl.Cr., 409 P.2d 381 (1966). The premise for this rule was recognized in *Robinson v.*

*State,* Okl.Cr., 444 P.2d 845, 847 (1968), wherein this Court stated:

" . . . The underlying principal requiring that a Motion for New Trial be filed prior to the rendition of judgment and sentence, setting forth specifically those errors of which the defendant complains that he has been denied a fair trial, is founded upon the rationale that the trial court should be given an opportunity to intelligently consider and pass upon the alleged errors prior to the rendition of the judgment and sentence. It is reasoned that if the trial court is apprised of the commission of prejudicial errors, then he will correctly grant a new trial, thus obviating the necessity of the costly expense of an unnecessary appeal to this Court."

Accordingly, upon careful consideration of the entire record before this Court, including a complete transcript of the evidence adduced upon trial, we are of the opinion that no error occurred affecting the substantial rights of defendant to his injury.

■ In the sole remaining assignment of error defendant seemingly argues that this case must be reversed for a new trial since subsequent to the trial the court reporter misplaced a portion of her notes and was unable to transcribe any of the closing arguments except the first four pages thereof. This contention is supported by the court reporter's certificate to the. transcript and in a different case could present a meritorious proposition. See, *Bailey v. United States,* 3 Okl.Cr. 175, 104 P. 917, 25 L.R.A., N.S., 860 (1909), and *Hixon v. State,* Okl. Cr., 456 P.2d 117 (1969). However, such cases are predicated upon the defendant complying with all the requirements of law in perfecting his appeal. As previously observed, defendant's Motion for New Trial was fatally defective in this regard, and this Court has specifically held that allegedly prejudicial statements of the prosecuting attorney in his closing argument will not be considered upon appeal when not raised in the ac-

cused's Motion for New Trial and not passed upon by the trial judge. See, *Ausmus v. State,* 43 Okl.Cr. 66, 277 P. 259 (1928), and *Garrett v. State,* Okl.Cr., 525 P.2d 1238 (1974). Even now, defendant fails to delineate, in any manner, what error occurred in closing argument or how he was prejudiced thereby, and simply makes a general allegation that improper and prejudicial remarks were made in behalf of the State. In the present case the evidence was clearly sufficient to support the verdict of the jury, and in accordance with 21 O.S. Supp.1974, § 701.4, punishment was fixed by the trial court rather than the jury. Under such circumstances, we will not presume prejudicial argument of fundamental dimension based upon such an allegation as is here presented. We are, therefore, of the opinion that this proposition is without merit.

For the above and foregoing reasons, the judgment and sentence appealed from is, accordingly, *AFFIRMED.*